# UTAH SAVINGS & TRUST CO. v. BAMBERGER.

No. 1721.   Decided September 19, 1906 (86 Pac. 961).

CONTRACTS—CONSIDERATION.   Plaintiff's intestate agreed to cancel a
note executed by defendant, if defendant would pay or cause to be
paid a certain note and bonds given in condemnation proceedings
by a certain railroad company on which defendant and intestate
were liable.   Defendant was subsequently appointed receiver of the
railroad corporation, and later organized a new corporation and
paid the notes and bonds either from the assets of the old or the
new corporation; defendant being the sole owner of the new corpora-
tion.   *Held*, that such payment was not made pursuant to the con-
tract with plaintiff's intestate, but was independent thereof, and
did not therefore form a consideration for the cancellation of de-
fendant's note to intestate.

APPEAL from District Court, Salt Lake County; M. L.
Ritchie, Judge.

Action by the Utah Savings & Trust Company, as adminis-
trator with the will annexed of the estate of James F. Wood-
man deceased, against Simon Bamberger.   From a judgment
for defendant, plaintiff appeals.

REVERSED.

*Zane & Stringfellow* for appellant.

*Henderson, Pierce, Critchlow & Barrette* for respondent.

### APPELLANT'S POINTS.

The opinion of the Supreme Court upon the first appeal is
the law of this case and should have been followed by the dis-
trict court upon the second trial, and is binding on this court
on this appeal.   The reversal and the remanding of the case
by the Supreme Court with direction to the court below to
grant a new trial, in a legal sense meant a retrial according
to the opinion of the Supreme Court.   (*Hall v. State*, 87 N.

Y. Supp. 338; *Snyder v. Jacklin,* 74 Pac. 139; *In re Estate Christenson,* 23 Utah 209; *Richardson v. Diberdall,* 98 N. Y. 164; *Egget v. Allen,* 96 N. W. 803; *Gams v. Rugg,* 148 U. S. 241; *Skillern's Executors,* 6 Cranch. 264; *Ashcraft v. Cox,* 77 S. W. 718.)

The doing of the acts specified in the contract was the consideration stated therein for the surrender of the note by Woodman to Bamberger. The promise to do the acts was not the consideration. (*Pope v. Hays,* 19 Tex. 379; *Dickson v. Richards,* 14 Pick. [Mass.], pp. 217, 218; *Parney v. Thompson,* 45 N. Y. 58; *Condif v. McLeon,* 8 S. W. 43; Hammond on Contracts, pp. 701, 703.) "It may be stated as an elementary principle that neither is the promise to do nor the actual doing of that which the promise is bound by law to do a sufficient consideration to support a contract in his favor." (6 Am. & Eng. Ency. of Law, pp. 750, 752; *Conover v. Stillwell,* 34 N. J. Law 58; *Lewis v. McReavey,* 7 Wash. 274; *Reynolds v. Nugent,* 25 Ind. 328; 1 Parsons on Contracts, p. 467; *Dunckel v. Dunckel,* 56 Kan. 25, 8 N. Y. Supp. 888; *Pope v. Hays,* 19 Tex. 375; *Parmelee v. Thompson,* 45 N. Y. 58; Hammond on Contracts, p. 662, 9 Cyc. 34.)

### RESPONDENT'S POINTS.

The law does not require exact and literal compliance with an agreement. Substantial compliance is sufficient, especially if it be satisfactory to the contracting party. Mr. Woodman was satisfied. The contract was fulfilled. Through the efforts of respondent, the deceased was relieved of a great burden of debts and necessary attendant anxiety. (*Onderdonk v. Gray,* 19 N. J. Eq. 65; *Waters v. Harvey,* 3 Houst. 441; *Hughes v. Eschback,* 7 D. C. 66; *Morford v. Mastin* [Ky.], 17 A. D. 168; *Adams v. Hill,* 16 Me. 215; *Hutchins v. Webster,* 165 Mass. 439; *White v. Hewitt,* 1 T. D. Smith 395; *Vroman v. Darrow,* 40 Ill. 171; *West v. Platt,* 127 Mass. 367.)

STRAUP, J.

This is an action brought by appellant against the respondent on a promissory note made and delivered by the respondent to James F. Woodman, appellant's intestate. The principal defense alleged in the answer is that in consideration of the respondent paying, or causing to be paid, certain notes and certain undertakings in condemnation proceedings jointly executed by Woodman and the respondent as sureties, the note sued on was canceled and surrendered. A trial before the court and a jury resulted in a verdict and a judgment in favor of the respondent. The case was before us on a former appeal, reported in 29 Utah 370, 81 Pac. 887, where may be found a complete statement of the material facts. Upon the evidence then before us we held that "the gist of the express terms of the oral contract [the alleged agreement to cancel and surrender the note sued on] is that, in consideration of Bamberger paying or causing to be paid the bank notes and condemnation bonds, Woodman agreed to surrender and cancel the note sued on. The doing of the one thing was the consideration for the doing of the other. It is not claimed that Bamberger paid the bank notes, but that he caused them to be paid. Before it can be successfully claimed that he caused them to be paid, it must be shown that he did something which produced or effected the result of payment. Otherwise the consideration moving from him failed. The evidence is wanting that he did anything which produced or effected this result. What he did in the premises was done as an officer [receiver] of the court, and in the performance of a legal duty thereby commanded of him, and the performance of this duty produced and effected the result of payment, which performance and result obtained was not at all dependent upon the agreement made between him and Woodman, nor at all affected thereby. To the contrary, all the evidence in the record showing what Bamberger did by way of organizing the new company, paying the money into its treasury for its capital stock, and with which the new company purchased the property of the old company at the receiver's sale, and of winding up the business of the old road, which resulted in the

payment of the bank notes and condemnation bonds, were all done prior to the making of the said oral agreement. In other words, what Bamberger did was not done by virtue or in pursuance of this oral agreement, or as and for an act of himself."

It is now claimed that the record on this appeal shows that the condemnation bonds were not paid out of the receiver's fund, but that they were paid by Bamberger in pursuance and by virtue of the oral agreement. While true the evidence shows that they were not paid out of the receiver's fund, still the evidence in the record is insufficient upon which to base the claim that they were paid because or in consequence of the oral agreement. The Great Salt Lake & Hot Springs Railway Company brought certain condemnation suits in Davis county to condemn land for its right of way. Upon the institution of the suits, it applied for and obtained possession and occupancy of the land sought to be condemned pending the actions, in consideration of which Bamberger and Woodman, stockholders of the company, executed a bond or undertaking as sureties for the railway company, to the effect that it would pay the adjudged value and all damages in case the land be condemned, all damages from the occupation before judgment in case the premises are not condemned, and all costs; and if the railroad company should pay the said judgments, damages, and costs, then the undertaking to be null and void. After these suits had been commenced, and while pending and undetermined, in certain proceedings had, Bamberger was appointed a receiver of the railway company. A corporation was organized by him, called the "Salt Lake & Ogden Railway Company," of which he held and owned all the capital stock. The affairs of the old railway company were wound up, and all its property, franchises, and rights of way were sold to the new company, the Salt Lake & Ogden Railway Company. With the proceeds of sale the debts of the old railway company were paid, including the bank notes. Thereafter the new railway company prosecuted the condemnation suits to judgment. Some of the judgments were paid by the new company, and others by Bamberger, but all were.

paid as soon as the verdicts were rendered. Those paid by the railway company were paid by it from moneys paid by Bamberger into its treasury, or from overdrafts on banks arranged for and secured by him. By reason of these transactions the claim is now made that Bamberger paid the bonds or undertakings, executed by himself and Woodman as sureties, because and in pursuance of the oral agreement had been between them.

In the first place, it will be observed that no liability on the bonds or undertakings had ever arisen. The judgments in the condemnation suits were paid as soon as the verdicts were rendered. There is no fact nor circumstance in the case which in the least indicates that such payments were made to avoid liability on the bonds, or to save Woodman harmless from such a liability. To the contrary, all the evidence in the case shows that the payments were made in consideration of acquiring the lands condemned, and, as testified to by Bamberger himself, for the benefit of the new railway company owned by himself, and to secure the right of way. In other words, owning all the capital stock of the company, instead of his going through the formality of giving himself notice and of levying an assessment against himself, he paid or furnished the money with which to pay the verdicts in the condemnation suits as soon as they were rendered, not because of any agreement had between himself and Woodman, but to acquire the right of way for the railway company owned by him. Upon reading this record, the conclusion is irresistible that not anything that was done by Mr. Bamberger with respect to the payment of the verdicts was in the least induced by the oral agreement, but that all that was done by him was wholly independent thereof. We see no substantial difference between the evidence on this appeal and on the former appeal. Upon the evidence in this record the trial court ought to have directed a verdict for plaintiff.

The judgment of the court below is reversed, and the case remanded for a new trial. The appellant is given costs.

McCARTY, J., concurs. BARTCH, C. J., dissents.